UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ORAL JASON MURPHY, <br><br>Plaintiff, <br><br>v. <br><br>CLARK COUNTY, MISSOURI, <br>  Hold for Service. <br><br>And <br><br>PAUL GAUDETTE <br><br>And <br><br>TAMMY WEBSTER, <br><br>Defendants. | Case No. 2:13-CV-00056-HEA |

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR**
**DECLARATORY JUDGMENT AND DAMAGES**

Plaintiff Oral Jason Murphy for his first amended complaint against Defendants Clark County, Paul Gaudette and Tammy Webster states as follows:

**INTRODUCTION**

1. This complaint is for declaratory judgment and damages for civil rights violations arising out of incidents that occurred in Clark County, Missouri, from December 4, 2012 through January 24, 2013.

2. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, because Plaintiff's constitutional rights under the Fourteenth Amendment were violated when Defendants were deliberately indifferent to Plaintiff's serious medical

need while he was in Defendants' custody between December 4, 2012 through January 24, 2013.

3. Specifically, Defendants denied Plaintiff access to a doctor despite the fact that Plaintiff was suffering from a cancerous tumor located in his colon, which prevented him from having bowel movements, caused him to routinely vomit, and lose nearly fifty pounds in less than two months.

4. Plaintiff's dire medical condition was obvious and Defendants were aware of Plaintiff's medical need, but intentionally disregarded that need and refused to provide Plaintiff with a doctor, despite Plaintiff's repeated requests for medical assistance.

5. Defendants' deliberate indifference to Plaintiff's medical need and the delay in medical care allowed the cancerous tumor to enlarge in Plaintiff's colon to such a degree that Plaintiff's colon ruptured spewing fecal matter throughout his internal body cavity while he was in the care and custody of Defendants.

6. Even after Plaintiff vomited his own feces, Defendants failed to provide any medical care.

7. Each of these violations were committed as a result of the hiring, training, supervision, policies, customs, and practices, or lack thereof, of the Sheriff's office of Defendant Clark County.

8. Defendants' repeated refusals to provide Plaintiff with medical care shocks the conscious in that such conduct constituted deliberate indifference,

intentional disregard, or gross negligence to Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

**PARTIES**

9. Plaintiff is a citizen of the United States of America and a resident of the State of Missouri.

10. Defendant Clark County is and was a municipal corporation organized and existing under the laws of the State of Missouri.

11. Defendant Clark County maintains control and/or operation of the Clark County Sheriff's Office, and delegated its policymaking and supervisory authority, in whole or in part, to Defendant Gaudette who acted under color of state law.

12. Defendant Paul Gaudette is and was at all times relevant to the incidents described in this Complaint, the Sheriff of Defendant Clark County, charged with the responsibility and policymaking authority for the Clark County Sheriff's Office, and the training and supervision of Clark County jail officers and employees, including Defendant Tammy Webster.

13. Defendant Gaudette is sued in his official capacity as Sheriff of Clark County.

14. Defendant Tammy Webster (hereinafter "Defendant Webster"), is and was at all times relevant to this Complaint, a jailor for the Clark County Jail, acting under the control of Defendant Gaudette and Defendant Clark County through its Sheriff's Office. Defendant Webster acted pursuant to an official policy, custom, and/or practice of the Sheriff's Office controlled by Defendant Clark County.

15. Defendant Webster is sued in her official capacity as an officer for Defendant Clark County, and also in her individual capacity.

## JURISDICTION AND VENUE

16. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the federal constitution. Therefore, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.

17. The relevant acts and omissions occurred in Clark County, Missouri; therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

18. Divisional venue is in the Northern Division because the events giving rise to the suit occurred in Clark County, Missouri. E.D.Mo. L.R. 2.07(A)(1), (B)(2).

## COUNT I: FOURTEENTH AMENDMENT

19. Plaintiff was held in the custody of Defendant Clark County for a period of fifty-one (51) days, from December 4, 2012 through January 24, 2013.

20. On or about December 4, 2012, Plaintiff was arrested by the Sheriff's Office of Defendant Clark County on charges of theft and manufacturing a controlled substance.

21. Plaintiff was initially held on a $50,000 cash only bond.

22. Between December 4, 2012 and January 24, 2013, Plaintiff was a pre-trial detainee at the Clark County Jail, in the sole legal custody of Defendant Clark County.

23. As such, Plaintiff was entitled to protection against cruel and unusual punishment under the Fourteenth Amendment.

24. During his third week in custody, Plaintiff began complaining to Defendant Webster that he was sick and needed a doctor.

25. Specifically, Plaintiff complained to Defendant Webster about his inability to have a bowel movement and severe stomach pain.

26. Plaintiff asked Defendant Webster for laxatives, but was denied at that time.

27. Plaintiff also informed Defendant Webster that he had thrown up.

28. On or about January 1, 2013, Plaintiff's mother, Reva Bunk, called Melody Shannon, a jailer at the Clark County Jail, and told her that Plaintiff needed stool softeners or laxatives so he could have a bowel movement.

29. Ms. Shannon informed Ms. Bunk that she would have to go through Defendant Webster for approval.

30. Ms. Bunk later contacted Defendant Webster and told her that Plaintiff needed to see a doctor and he that needed stool softeners or laxatives so he could have a bowel movement, but she was refused.

31. Defendant Webster told Ms. Bunk that if Plaintiff needed a doctor, Ms. Bunk would have to arrange it with his doctor and would have to pay for it before Plaintiff was to be seen by a doctor.

32. Several days after Plaintiff and Ms. Bunk first requested that Plaintiff receive laxatives, Defendants relented and finally permitted Ms. Bunk to bring laxatives to Clark County Jail that Defendants would distribute to Plaintiff.

33. Therefore, Defendants knew and thereby acknowledged that Plaintiff required medical treatment.

34. However, Defendants still refused to provide Plaintiff with access to a doctor or nurse.

35. Defendant Webster even mocked Plaintiff when he complained of pain, on one occasion she said "oh, does Jason's tummy hurt?"

36. On January 6, Ms. Bunk visited Plaintiff at the Clark County Jail.

37. On that occasion she recalls it looking black under Plaintiff's eyes and Plaintiff complaining about his stomach pain and inability to have a bowl movement.

38. When Ms. Bunk asked why Defendants were refusing to take Plaintiff to a doctor, she was told that he just needed to exercise and "to move around more."

39. Throughout his time in the custody of Defendant Clark County, Plaintiff and Ms. Bunk complained about Plaintiff's stomach pain, inability to have a bowel movement, requested that Defendants provide Plaintiff with medical treatment on at least a dozen occasions, but each time their requests were summarily ignored.

40. Plaintiff's condition worsened as his stomach pain increased; he still had no bowel movement, he was unable to keep food down, he vomited frequently, and was visibly losing weight.

41. Plaintiff's medical need was obvious.

42. On January 17, 2013, Defendant Webster contacted Ms. Bunk and told her that Plaintiff needed to see a doctor.

43. Therefore, Defendant Webster knew Plaintiff required medical treatment.

44. Defendant Webster further told Ms. Bunk that she would make an appointment for him the first part of the next week, around January 21.

45. Plaintiff did not see a doctor on January 21, and his condition continued to deteriorate.

46. On or about January 22, 2013, Plaintiff asked to be taken to the emergency room because his pain was so severe.

47. Defendants refused Plaintiff's request, and he was given stool softeners and put back to his cell.

48. From December 4, 2012 to January 24, 2013, while in the custody of Defendants, despite the fact Defendants knew of Plaintiff's bowel dysfunction and severe stomach pains, Defendants knowingly, intentionally, and deliberately disregarded Plaintiff's serious medical need and Plaintiff was wrongfully denied access to a doctor and/or proper medical care.

49. From December 4, 2012 to January 24, 2013, Plaintiff was **never** seen by a doctor or nurse.

50. From December 4, 2012 to January 24, 2013, the only medical assistance Plaintiff received were laxatives and ibuprofen.

51. On January 24, 2013, Plaintiff was scheduled for an appearance in the Clark County Court on his pending criminal charge.

52. While awaiting his hearing that day, Plaintiff vomited feces in his jail cell.

53. Despite the fact Plaintiff vomited feces in his jail cell on January 24, 2013, Defendants still refused to provide Plaintiff with medical care or access to a doctor at that time.

54. At that time, Plaintiff's physical condition looked appallingly dire. Photographs of Plaintiff as he appeared in Court on January 24, 2013, are attached to this Complaint as Exhibit A and are incorporated herein by reference.

55. Plaintiff had lost over fifty pounds during his detention and illness in the Clark County Jail, while in Defendant Clark County's custody.

56. At the time of his arrest, Plaintiff weighed approximately 185 pounds.

57. On January 24, 2013, Plaintiff weighed only 130 pounds.

58. Despite being previously held on a $50,000 cash only bond, Plaintiff was released on no bond on January 24, 2013, presumably so as to allow him the opportunity to finally obtain necessary medical treatment.

59. Upon information and belief, Defendants believed that Plaintiff was on the verge of death and released him solely in order to prevent him from dying in their custody.

60. After the hearing, but prior to his release, Plaintiff vomited feces again while in Defendants' custody.

61. Again, despite the fact Plaintiff vomited feces while in Defendants' custody, Defendants failed to provide Plaintiff with medical care or access to a doctor at that time.

62. After his release, Plaintiff was transported to the Keokuk Area Hospital.

63. Upon examination, Plaintiff was told that he had a cancerous tumor around his colon and that his bowel had actually burst, releasing fecal matter throughout Plaintiff's body.

64. Plaintiff was rushed into surgery, in an attempt to save his life.

65. Physicians and surgeons at Keokuk Area Hospital explained to Plaintiff's mother that he was gravely ill and likely would not survive the operation.

66. Doctor David Waddell noted that Plaintiff "is going to surgery as soon as possible and will return to critical care following . . . hope that his youth will supply enough vigor to allow him to survive."

67. Defendants violated Plaintiff's clearly established constitutional right against cruel and unusual punishment under the Fourteenth Amendment not to be subject to deliberate indifference to a serious medical need, by one or more of the following acts:

    a. Denying Plaintiff's request for medical care;

    b. Denying Plaintiff's access to a medical doctor;

    c. Delaying Plaintiff's access to proper care until he was released from jail on January 24, 2013;

    d. Deliberately ignoring Plaintiff's visible, rapidly deteriorating health—evidenced by his vomiting, inability to have a bowel movement, severe dehydration, and drastic weight loss---and his need for medical treatment during his incarceration from December 4, 2012 to January 24, 2013.

68. Defendant Clark County and Defendant Gaudette failed to provide sufficient policies, training, and supervision of officers and employees of the Clark County Jail, specifically pertaining to medical care of detainees.

69. Upon information and belief, Defendant Clark County and Defendant Gaudette failed to provide any policies or manuals to govern the duties of their officers and employees.

70. That failure caused Defendants to willfully and intentionally disregard Plaintiff's serious medical need.

71. Further, upon information and belief, the Sheriff's Office of Defendant Clark County and Defendant Gaudette instructed Defendant Webster, to follow a policy or procedure to intentionally and willfully delay prisoner's access to medical care due to budgetary constraints.

72. Therefore, Defendant Clark County and Defendant Gaudette are liable for the unconstitutional actions of Defendant Webster, by failing to properly train and supervise said Defendants, and by their deliberate indifference to and willful blindness to the unlawful customs described above.

73. Had Defendant Clark County or Defendant Gaudette implemented a proper policy of having a doctor on staff for its detainees, or a means of transporting detainees to a medical facility when needed, or a policy or procedure to provide necessary medical care at all, or provided proper policies and procedures and training regarding a detainee's right to medical care, Plaintiff's federal constitutional rights would not have been violated.

74. Defendants' conduct is extreme and outrageous and shocks the conscience.

75. As a direct and proximate result of the actions and inactions of Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his constitutional right under the Fourteenth Amendment to be free from deliberate indifference to a serious medical need;

   b. The physical torture of not being allowed to obtain necessary medical treatment and the inability to do anything about that;

   c. Serious and medically diagnosable emotional injuries;

   d. The loss of approximately fifty-five (55) pounds during his incarceration;

   e. The excruciating pain of a ruptured bowel and immediate surgery after his release where approximately one-third of Plaintiff's colon was removed;

   f. The failure to have his cancerous tumor diagnosed and treated, thereby causing and/or continuing to the worsening of Plaintiff's cancerous condition;

   g. Significant medical bills and expenses; and

   h. The lost opportunity to properly treat his cancer due to a lack of diagnosis caused by Defendants' failure to provide Plaintiff basic medical treatment and their refusal to honor the requests of Plaintiff and his mother for basic medical care.

76. As a result of Defendants' deliberate indifference to Plaintiff's serious medical need, Plaintiff faces a likely fatal fate from Perforated Colorectal Cancer.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Clark County, and declare that the foregoing policies or customs of the Sheriff's Office of Defendant Clark County are unconstitutional; issue an injunction requiring Defendant Clark County to implement proper medical staffing at its jailing facilities, and to develop and implement adequate training program for its prison officials, so that Plaintiff's here and other citizen's rights against deliberate indifference to a serious medical need under the Fourteenth Amendment are not again violated; award Plaintiff compensatory damages against Defendants Clark County, Paul Gaudette, and Tammy Webster for their violation of Plaintiff's constitutional rights under color of state law; award Plaintiff punitive damages against Defendant Tammy Webster in her individual capacity, for her violation of Plaintiff's constitutional rights under color of state law; award Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and grant such other and further relief as is available and appropriate under the circumstances.

HACKING LAW PRACTICE, LLC

*James O. Hacking, III*
James O. Hacking, III, #46728
Jennifer L. Shoulberg, #64152
34 N. Gore, Suite 101
St. Louis, MO 63119
P – 314-961-8200
F – 314-961-8201
E – jim@hackinglawpractice.com

and

LAW OFFICE OF JAMES R. DOWD

<u>/s/ James R. Dowd</u>

James R. Dowd

34 N. Brentwood Blvd. Suite 209

Clayton, MO 63105

P – 314-727-6777

F – 314-727-6773

E – jim@dowdj.com